Good morning, Your Honors. May it please the Court, I would like to reserve three minutes for rebuttal. This case presents several important questions concerning the standards for certifying class actions in this circuit. We respectfully submit that the district court committed legal error in certifying the class and the class certification order should therefore be reversed. First, the district court committed legal error when it decided that it would not apply what it called full-fledged Daubert scrutiny to the testimony, the expert testimony submitted by the plaintiffs from Dr. Shapiro. The court in reaching that conclusion relied on Judge Patel's decision in the Kurohara case, which had in turn relied on the district court's decision in the Duke's case. Those decisions relied on two Second Circuit decisions, the Karadad case and the Visa Check case, which have now been disavowed by the Second Circuit itself. And the fundamental error, we believe here, is that the district court felt itself constrained to, in terms of weighing the competing expert testimony on both sides, and viewed the inquiry as to the reliability of the expert testimony submitted by Dr. Shapiro to be subject to less scrutiny than it would be in an under a merits trial. Mr. Boutrous, what exactly is your contention with respect to the reliability prong, assuming you're right? It strikes me that your principal position is that the expert, Mr. Shapiro, simply failed to take account of the elements of the cause of action under the Labor Code and Section 208. If that's so, why isn't that, in effect, an error that goes more to whether the court got the call right on predominance rather than to whether the expert opinion is reliable? I think it's both, Your Honor. With respect to the expert testimony itself, it's more a question of, well, two things. First, it's unreliable. The testimony was, as the district court found, filled with errors, and even after being corrected, the court found questions about the competency. But put that aside. Putting the errors aside. The lack of fit between what Dr. Shapiro was called to testify to do, which was to give testimony that there were class-wide proof that could be given as to the elements of the claim, and his failure to consider the actual evidence that was used during the termination process, the personnel files, the actual data that goes into the process, and then his conclusions leap beyond what the data that he relied on would show. And I think the Supreme Court's decision in the GEV Joiner case talked about the fact that sometimes in experts' testimony, there's too great an analytical gap between the conclusions and the data and the methodology that was used to reach them. So I think that's the Daubert piece of it. But I do think, Your Honor, there's a significant error on the predominance inquiry because, and this is another pure legal error, the district court equated on page 18 of the excerpts of the record, equated predominance with commonality and ascertainability, and that is incorrect. The Supreme Court, Justice Ginsburg's opinion in Amchem for the Supreme Court, said that predominance is a much more demanding standard than commonality, and it requires a determination, a weighing of whether the individual issues predominate over the common issues or vice versa, and that it's a very vital prescription. But the district court explicitly said they were the same thing here and did not look at the expert testimony on both sides and make a determination as to whether the common issues, to the extent they existed, predominated over the individual issues, and we think that was error. So if that were correct, then what should we do about it? Send it back for a determination under a correct standard or what? I think here, Your Honor, the Court can simply reverse the class certification order, vacate it and reverse, because the plaintiffs, the courts, the Second Circuit, for example, in the McLaughlin case, which we've cited, which was a certification order reversal, reversed, finding that the plaintiff's theory and its methodology in their approach to proving class-wide issues was flawed and that applying the correct legal standards, that a class could not be certified, and we think that's correct here, because the plaintiffs staked their claim on their expert relying on these computerized databases, as opposed to the actual evidence concerning the standards in the statute, and even when challenged on that, they stuck with that. That's the record before the Court, and the plaintiff's theory, we believe, is focused solely on the computerized databases. That's a fundamentally legally erroneous theory. Kennedy, do you want us to conclude that Shapiro is not a reliable expert? There are really two pieces to it, Your Honor. First is lack of reliability, because of the multiple errors and the flaws in the analysis that was presented to the district court in the first instance, plus the lack of reliability of a methodology, a methodology that did not include an analysis of the actual provisions in the statute, of the relevant evidence, and conclusions that leap far beyond where the data would take the expert. That would be one way to rule that his testimony was unreliable and does not demonstrate class certification, and therefore, the order should be reversed. Alternatively, if the Court were to clarify the standards, it could reverse and remand for further proceedings under the opinion, but we think the result would be the same, and the record before the Court is very clear that the plaintiffs did not meet the standards governing certification. Let me ask you a preliminary question before we get there. Isn't this the basic underlying issue of the, you know, the extent to which Shapiro has to be qualified for class certification purposes, isn't that almost the same as the question in the Dukes case? Yes, Your Honor. That issue and the question of the competing expert testimony. Shouldn't we just hold this case until Dukes is decided? That's certainly one option for the Court. There are other issues. Do we have any other option? Well, there are other issues in the Dukes case that could be decisive in that case as well. You mean the in-bank Court might not reach this question about the expert qualification? That's correct, Your Honor. There are questions about the standards for B-2 certification and other issues. But certainly there are overlapping issues here. And I would point out that to the standard. On the Daubert issue, but not on the predominance issue, which isn't raised in Dukes, is it? Exactly in this way? Not exactly in this way. That's correct, Your Honor. There are different predominance issues and different issues concerning individualized issues. The Dukes case does present the question of whether the district judge is entitled to and must weigh the competing expert testimony. The district judge in Dukes relied on the same line of cases that has now been disavowed by the Second Circuit, so there is overlap there. With respect to the individualized issues, I would just say that there were a number of issues that Dr. Shapiro's testimony simply cannot demonstrate on a class-wide basis. Number one, liability. He did not purport to opine that there was a basis for class-wide liability determinations. He only purported to opine about calculating damages. So that's just a basic flaw in the plaintiff's case. Secondly, the willfulness requirement under the statute, which requires individualized proof. In addition, the question, which is fundamental to the penalties question, whether the individual employees appeared at the store and to claim their pay after termination or discharge, all those were highly individualized issues. And that information is not available in the data systems at Walmart? It's not available in the data systems, the computerized data systems that Dr. Shapiro limited himself to. It is available in personnel files and the personnel managers, but Dr. Shapiro purposefully limited himself from reviewing that information. I think in Central District California, class certification issues by local rule have to be decided within the first 90 days. And that, the only reason I'm looking at it, clearly class certification issues are to be determined as early as possible. And Duke's frankly made some sense to me in terms of a relaxed approach at that early stage. If you've got to make a class certification decision within 90 days and the first discovery request doesn't give you everything that you need, you're basically the plaintiff was thrown out of court. No class certification, right? Well, Your Honor, it's a very important decision during the litigation. And if there is a limit on time, I think the Federal rules say rule 23 as soon as practicable. And I think it is a task that is formidable, I think, for the district judges. But, for example, Chief Judge Sirica's decision in hydrogen peroxide talks about the fact that the district judge must look at all the evidence and make findings based on the evidence. And we're not underestimating the fact that that is a significant task, but it's such a crucial point in the litigation. If the class is certified, it changes the dynamic and that's why there's 23F petitions as well. So I don't disagree, Your Honor, that there is a, there are obligations on the district court and that it's a significant one. But these are decisions that must be made at the rule 23 stage. Do you ever consider a summary judgment motion at the trial court here? Well, the summary judgment is a possibility, but then we're talking, again, it sort of goes to the class certification decision. That can be bad for the plaintiffs. If it turns out the class was wrongly certified and a defendant comes in and moves for class certification and wins, all the plaintiffs have lost when maybe their claims could not be adequately represented at the class, as a class. And with that, I will reserve my remaining time, unless there are other questions. Mr. Morrow. Good morning, Your Honors. In response to Judge Layton's question, there is a summary judgment motion pending. This was pending after class certification, Your Honor. Your Honor, I must respectfully disagree with opposing counsel as to whether this case represents a question of challenging an incorrect legal conclusion employed by the lower court or, in fact, it is a matter of their challenging the discretion exercised by the lower court. What the other side is doing is giving no real deference to the analysis and investigation and consideration, pardon me, done by the district court. This district court, in its order, went into great detail, not only analyzing Dr. Shapiro's work, but also analyzing Dr. Martin's criticism of that work and came to a conclusion. The conclusion was that any errors in Dr. Shapiro's work were minimal and, in fact, could be corrected, were corrected, and the difference was two one-hundredths of one percent of a correction. Of course, that's talking about errors of calculation. And as I read your position, it seems to be focused, in fact, entirely on the fact that the amount of the wages due was miscalculated. And whether there's a one or two-tenths of a percent of difference, I mean, who cares, okay, at this stage. But the real question strikes me as not whether the amount was miscalculated, but rather whether, in order to prevail at trial, you would have to show that the employees received their wage check, that is, that they met the presentment requirements. And only then would it matter whether the wage amount was miscalculated. And that, as I understand it, neither Shapiro nor through any other source, is there any proffer. And so to me, the district court, if that's all correct, would have just plainly erred legally. No, Your Honor, respectfully, the issue of whether the employee must present themselves for tender under Section 208 of the Labor Code was directly addressed by the lower court, was addressed in footnote number 5 of the lower court. And the issue, we have to understand, as the lower court, as the district court noted, is miscalculation. That's why. Well, you see, that's where I disagree. And so I need you to persuade me why the issue is miscalculation instead of whether the employees received their payment. I'll be happy to persuade you about that, Your Honor. The fact is that Walmart, in its records, in the very records that it uses to report to the taxing authorities, the wages it has paid, not the wages it intends to pay, not the wages it may pay, not the wages that have only been picked up by a check, but the wages it has paid, those are the very records that Dr. Shapiro relied upon. Those are the records that the district court found Walmart had conceded were made contemporaneously with either the cutting of a final check or the payment of cash. So what happens under California law is that if, and they're talking about the situation, did an employee actually come in for their final check? If in that rare situation, which we've shown is less than 10% of the time, they have an obligation to escheat that money for the benefit of the employee to the state of California. What they don't get to do is keep the money and say, he never came back for his check. It's now Walmart's money. The fact is that whether or not the check was actually picked up makes no difference in the fact that the amount of the final payment either actually, excuse me, actually given to the employee or rarely escheated to the state wasn't a miscalculation. It was an underpayment. And if we look at. It's not an underpayment unless it's paid. I mean, that's the whole point I'm making is that you've got to violate the wage code. It seems to me that California law has made that very clear. But they are paid. The guy has got to come in and pick up his check or he's got to have designated an address where he wants his check mailed. And how do you prove that? Your Honor, there is one other step or you gave two examples. Pick up the check, designate where it's mailed. There's a third step or a third alternative. Or if they don't come in, the check is escheated to the state of California for the benefit of that employee. That is why, Your Honor, Walmart has reported every one of these wages found in its database as having been paid. They don't list them as only paid when someone comes in to get a check. They have conceded in the lower court that the moment the check is cut or the cash payment is tendered, that they record that contemporaneously as paid. And that's what they have to do. We're not criticizing that because that is what they're required to do. It is paid. If in that rare circumstance someone hasn't come in, then the money goes for the employee's benefit to the state of California. If we look at the analysis that the district court did, it's a very good example of the applicability of Section 208 in that she denied certification of subclass number three. And what is the difference between the three? Subclass number three may be working backwards. Subclass number three was a class of individuals that we proposed who received ultimately received all wages due them, but they got them late. They didn't get them timely. I mean, what is the legal difference between the three subclasses? Why, in other words, is it logical to treat one and two differently from three? Because just exactly as the district court found in footnote 5. Yeah, but footnote 5, footnotes, I mean, who reads footnotes? I mean, I'm looking at what she really decided, not what was an aside. Right. This wasn't an aside. And in prior, the footnote that I'm talking about comes in regard to the body of the text where the court denies certification of subclass three. And she denies it because in the case of subclass three, it's not a matter of calculation. Subclass three requires that the employee came back. So if an employee secreted himself or herself from final payment, then you could not determine how late the payment was. That's the difference with what we're dealing with here. Here, in subclasses one and two, it doesn't matter when the employee got the check because he's an underpayment. Yes, Your Honor. That's exactly right. Right. And that is why Section 208 of the Labor Code is literally a red herring in this case. Going even beyond that and going to, and I hope I've addressed, Judge Reimer, your question. Thank you. Going beyond that into the issue of exactly what burden do we put on district courts and what burden do we put on plaintiffs in regard to class actions in light of Rule 23C1A's requirement that class certification motions be brought as soon as practical? That's exactly, this case is an example why to hold plaintiff's counsel to a standard equivalent to a summary judgment motion at the certification stage is absolutely inappropriate. Here, we brought our motion. The record is undisputed. After our motion was brought, the other side was taking Dr. Shapiro's deposition and criticized him. Why didn't you examine, sir, the cash office database? Now, we had put out discovery, we asked, we demanded production of all databases that in any way contain any data concerning payroll payments, vacation pay, personal pay. And Dr. Shapiro's answer was she didn't produce it. He didn't give it to me in response to discovery. So then they filed their opposition to our motion, criticizing Dr. Shapiro for not having seen this. Of course, as the district court noted, Dr. Shapiro, in five days after getting the missing and unproduced, although requested, data, was able to modify his conclusions. The point I'm making is that all discovery cannot be completed at this early stage to subject the certification motion to that standard that they are asking, which is really the equivalent of a summary judgment. What would be your game plan? Never mind specifics, but what's your game plan for proving the two subclass claims? Our game plan, Your Honor, is to introduce, in general, is to introduce Wal-Mart's records to the jury, to have our expert explain the amount of underpayment that he has calculated from those records. We also intend to cross-examine Dr. Martin, because she has determined a different, slightly different, not by very much, but a slightly different number as to the amount of underpayment. Then we will introduce evidence as to the knowledge of Wal-Mart that there was a systemic pattern of underpayments and a problem with its systems, so that this problem with not paying all vacation and personal time was systemic throughout the state of California, throughout the company in general, but our class is only California employees. And we will establish that Wal-Mart had corporate knowledge of this. In fact, in several years, instituted an internal program to investigate how to correct the problem, then abandoned that program when they found it would have been difficult for them, we don't know why, did not modify their computer system to fix the program. We intend to show we believe that there is a very simple, straightforward method that can be fixed. We believe we can show that other large corporations, massively large nationwide corporations, are able to have simple computer systems that don't do this. We will also believe we can show that as to the vacation and personal times on the books, there may have been a zeroing out of that automatically as part of Wal-Mart's system. So you asked for kind of a general, I think maybe I gave you too many specifics. Where's the proof of the violation of 203 and 208? Well, we're not claiming the violation of 208. It's 203, Your Honor. The violation of 203, Your Honor, is the systemic problem that permeates Wal-Mart's practices and the knowledge by Wal-Mart that the problem does in fact exist and their failure to do any action. Okay. Thank you. Finally, I think, again, just should be emphasized that even at the early stage of litigation, the district court here, let me back up. I think it is unfortunate that the district court made the comment that a full Daubert analysis is not required at the certification stage. I think as you talk about footnotes being an aside, I think that was an aside because Isn't that what Duke says? Yes, it is what Duke says, Your Honor. Which is now vacated. Correct. That's why we're aware of that. The point I'm trying to make, though, is that if you look at what this district court did, she did in fact analyze the testimony offered by the experts in great detail and reached a conclusion, and it would be respectfully submitted by us that that conclusion as to the reliability of the expert meets the requirements of Federal Evidence Code 702, that the testimony can prove useful to the trier of fact in making the determination of facts or issues in the case. That's the requirement. The requirement is embodied in 702 as amended in 2000. And that is exactly what the trial judge did. She acted appropriately and she acted well. And with 25 seconds left, if the Court has any further questions, I'll be happy to answer them. Thank you very much. I think so. Thank you. Your Honors, first of all, I think I want to make clear that much of what counsel just said is not part of the record. There's no evidence of the record on this ISCHEIT process and the ISCHEIT database. There's no evidence of this willfulness point. In fact, the district judge pointed out that plaintiffs had not offered any specific examples of proof that they would offer for that. And again, that's very much like what happened in hydrogen peroxide where the Third Circuit said you can't just say here's what I think I'm going to do without giving some evidentiary predicate to demonstrate that you would be able to prove the elements of the claim on a class-wide basis. Secondly, the Section 208 could not be clearer in the code that every employee who is office or agency where they worked. And the other sections make clear that to trigger the penalty obligation, the employee has a duty to appear at the store and so that's a predicate to a willfulness finding. And the district court on page 11 of the excerpts of record made very clear both that that's a requirement and that, quote, this information is not contained in any of the electronic databases at issue and can only be determined on an individualized basis. So what is your response to the footnote 5 issue? The footnote 5 issue I think is another flaw in the analysis. The court, the principal flaw in the district court's analysis there is that the court relied on Dr. Shapiro's assumption that the employee was paid when an entry in the data was made or a check was cut. And the evidence is actually absolutely to the contrary. I think page 430 in the excerpts of record, Dr. Martin's testimony talked about how the fact that there may have been an entry does not mean that the employee came and obtained the paycheck and it does not demonstrate at all that the appearance requirement had been satisfied. Well, Mr. Merlin says, okay, that's well and good, but I don't have to worry about that, because the only thing that makes a difference is in this calculation. That is, there is an underpayment. That's it. End of story. I think that's just incorrect, Your Honor, under section 203 and under the other sections of the Labor Code, which require that the employee appear and meet his or her obligations within 30 days. If they have not appeared or given mailing instructions, then they are entitled to no penalties whatsoever. And the record also reflects here that Walmart's personnel managers went to great to call them, to find them, to mail checks out without regard to whether they had appeared or not, so the fact that the payments were made does not give any indications whether an individual employee had been paid. So even if there's a systemic underpayment that occurs because of the computer system that is being used or the methodology used by Walmart, still there would not be any certifiable class on the basis that for the reason that it has to be demonstrated when or whether a person actually physically presented? For the penalties, Your Honor, that's correct, and that's clear under the statute. And just two other points. On the systemic note, I think the best evidence that there is no ability to prove a systemic problem based on these records or anything else is the fact that two of the three named plaintiffs were overpaid, Ballard and Wiggins. And the district judge in footnote 9 noted that plaintiffs conceded that below. So the two of the three people who are the named plaintiffs in the class, Mr. Ballard is the only named plaintiff in the subclass 2, which requires reversal of that. Their expert was not even able to demonstrate through his analysis that they were underpaid. And I believe my time is up. Thank you very much. Thank you, counsel, both of you for your argument. The matter just argued will be submitted. We're pleased to have with us today a group of seniors from Everett Alvarez High School. And after the Court, the Court's going to take just a very slight recess, and we'll be delighted to come back out and chat with you in just a few minutes. Thank you. All rise. This Court has decided to extend recess. Thank you.
judges: Leighton, Rymer, Tashima